Today is Oliver v. Warden Wilcox State Prison and we'll wait just a few minutes to allow for the changing of counsel and the settling of the courtroom. Oliver v. Warden Wilcox State Prison Mr. Garcia Gonzales Jordan Gonzales Oliver v. Warden Jordan Gonzales I think it would be helpful just to get back to the standard here. This isn't a negligence case, and as your Honors know well, that means that Oliver has to prove that the officers acted with criminal recklessness, meaning— Well, but let's talk about this, right? I mean, they did know that Mr. Morgan was a violent individual, right? I mean, the fact that they came with six or seven people to stop him and the fact that Mr. Oliver testified that they knew he was a Morgan— that he was a—Mr. Oliver testified that they knew that he was a violent individual. Why isn't that enough to show that they knew he was violent? Your Honor, I would disagree with that for several reasons. Number one, the response with the sexual assault response team, that was just standard procedure for any sort of inmate extraction. But more significantly— Is that in the record somewhere, that it was standard procedure? It is in the record that that is the team that responded, but— Right, but is that—is it in the record that that's the standard response team for any kind of incident? I am not sure, Your Honor, but more fundamentally— So we can't really rely on that then? Well, more fundamentally, Your Honor, what we do know is Mr. Morgan was in prison for purse snatching. We do know that every defendant testified that they were unaware and there is no evidence in the record whatsoever that Mr. Morgan had engaged in any past sexual assaults, nor is there any evidence in the record that they had any reason to believe that he might be violent towards Mr. Oliver in particular. Why was he known as the booty bandit? Your Honor, I would submit that he was not. All that we have in the record there is— So we have an issue of fact on that? We don't have an issue of fact. We have an issue of fact as to whether Mr. Oliver— what Mr. Oliver says that someone knew him as the booty bandit was correct. But let's say— Well, let me ask you a question. Let's assume that he was known as the booty bandit. So what does that mean? My friend says, well, that means you can draw an inference. The court can draw reasonable inferences. It can't speculate. And so the very— Well, what else would it mean if he's called the booty bandit? Well, it would be going against the evidence we do have. The evidence we do have is that there's no prior history of sexual assault. So— You can argue that to the jury. The nickname could very well be a gay slur against Mr. Morgan. That is most likely. This is what I'm going to do to you. And so this is what Oliver says that— But, again, as Judge Rosenbaum— He says Stanfield was present and heard these comments. Not Dease or the other guy, but Stanfield was present and heard these comments. That's what he says in his deposition. That's incorrect, Your Honor. The only basis he has for alleging that the guards know about this is what Your Honor has discussed before, which was this sort of proximity argument. And, again— So Oliver's wrong about that? He is wrong about that. And so that's what the district court said. But isn't that a credibility determination by the district court? It's not a credibility determination. Again, Your Honor, the court can draw reasonable inferences, but it can't speculate. And here's what's in the record about that. We have nothing about the layout of the jay ward. What we do know, though, the one piece of evidence that is in there about that is Mr. Oliver testifying that Morgan's past cellmate was moved 10 cells down. We do have evidence, Mr. Oliver saying, that all anyone did in the wing all the time was talk to each other nonstop. So we have a wing— Do we know why Stanfield put him in the cell with the booty bandit? Do we know why? In their declarations, I'm not sure if it's Stanfield or the warden testifying under oath that it was just because they needed to clear space for more prisoners in the segregation ward. And then Stanfield left after he put him in the cell. And normally— That's correct. Okay. So I think it would be helpful here, Your Honors, to go back to, and as Judge Rosenbaum discussed it at the outset of the argument, we have to focus on what the guards knew. So here's what the guards knew here, that Oliver said there was something not right with Morgan, that Oliver thought Morgan was on drugs, that Morgan was masturbating in his cell, and that Oliver wanted to be moved to another cell. For better or for worse— And also that Morgan—that Oliver was transgender and Morgan knew that. Well, I do want to talk about that. First of all, though, for better or for worse, all the things that I just mentioned are absolutely commonplace in prison. These prisoners live in their cells. In another context, of course it would be lewd and bordering on, you know, some sort of civil liability to masturbate in front of someone. This is where they live. This is their bedroom. This is their bedroom. So, and, Your Honor, on the trans point, I'm glad you raised that because it's simply not relevant in this case, and even my friends admit that in their brief, for the very simple reason that the only evidence that Mr. Oliver has put forward on that point is that he checked a box in a form that he was trans. He's not introduced that form into evidence, and he says he told the guards that he was trans. Let's keep in mind, and conceding that we have to view the evidence in Mr. Oliver's favor, all of the defendants in this case testified they have no idea he was trans, but what we do know from the record is that Mr. Oliver did not present as a woman. He had not gone through any hormone treatment, anything of the like. He has referred to himself and his counsel has throughout the course of this litigation as a man. There is absolutely nothing in the record that shows that the prison officials would have any reason to think that he was at an increased risk, and it's the default for- Well, you have Oliver's own testimony. He's told Stanfield, I don't feel safe. Don't put me in there with him. Right, and I would contrast that or point your honors towards- Oliver told Stanfield he was a transgender, didn't he? He claims that that is true. I think you're on a couple points on that. He said, I don't feel safe. Don't put me in there. I'm a transgender. He's been making these threats to me over a three-week period. I mean, this is stronger evidence than you have in Caldwell v. Ordon. I disagree with that, Your Honor, but again, I want to bring- Did he say he's been making these threats to me over the last three weeks? No, he didn't, and in fact, when he was asked- Because if he did say that, that is pretty strong evidence. He did not say that. He, in fact, affirmatively disclaimed that in his testimony. He was asked repeatedly, did you convey any of these threats to the guards? No. Had he threatened you at any point prior to the attack? No. So going back to Judge Wilson's question, again, this is subjective criminal recklessness. We're looking at this from the standpoint of the guards. So absent a categorical rule that trans inmates automatically are subject to some sort of different test and deliberate indifference cases, which this court has repeatedly rejected, there has to be evidence that the guards actually knew something about that transgender status could put him at additional risk, and that would typically- That does not help Mr. Oliver at all. The inmate and farmer had undergone hormone therapy. He had had a breast implant. He had had his genitalia removed. He wore women's clothes exclusively, and wardens in that case, based on that, had told him they didn't feel like they were keeping him safe. We have absolutely none of that here. We have a defendant who says just in time for litigation that he identifies as trans, and that's it. The guards had no reason to know, by basis of his appearance or otherwise, that that meant he would be at increased risk from Morgan, who, again, there was no past history of sexual assault. So the bare fact of- You would have to agree with me, though, that the law is clearly established that a prison guard cannot take affirmative steps to place an inmate into a known dangerous situation. Your Honor, I would take issue with that. As a general principle, yes, number one, though- Well, then you take issue with our decision in Caldwell v. Warden, then, which is what we held. I don't take issue with your decision. There are a few things to highlight with that, Your Honor. First, Wade v. McDade has happened in the meantime, which the court determined, as you know, in Wade, that the standards used by the court in all of those cases, including Caldwell, were the wrong standard. So in terms of their usefulness as clearly establishing the law, as Judge Carnes noted in his concurrence to an opinion that Judge Lagoa just authored a few weeks ago, those opinions are- So Caldwell v. Warden is no longer good law in the Eleventh Circuit? It can no longer clearly establish because it assessed the case under a standard that the court has concluded was flatly wrong. But let me talk about that. What's the standard now? The standard is subjective criminal recklessness. So the standard that was being used in Caldwell and other cases like that was mixing in an objectiveness standpoint. In other words, looking at what other people might think. That's no longer the law, and that was incorrect. But even setting that aside, Your Honor, what happened in Caldwell was the cellmate had been threatening the plaintiff and actually started a fire in his cell with the plaintiff's possessions. When that happened, the plaintiff was begging, please, please don't put me back in there. This guy is dangerous. And the guards did put him back in there. Well, that's exactly what we have here. Oliver says, don't put me in there with him. I don't feel safe. That is absolutely not on off horse with Caldwell, and let me explain why. This court has said, number one, that threats between inmates are common. That just happens in prison. And because of that, you need something beyond the basic conveyance of a threat by the inmate to show deliberate indifference on the part of the guards. We don't have that here. Beyond Mr. Oliver's admissions that he didn't tell the guards about any sort of threat and that Morgan did not threaten him at all. All right. Well, the guard already knew of this guy's reputation in the prison. That's clear in the record, right? I cannot push back on that enough. The guards testified under oath that they did not, and all that we have on that is Mr. Oliver's bare assertion that Morgan was known as the booty bandit. So we have an issue of fact. That is not an issue of fact. Again, the court can make reasonable inferences from the record. It can't speculate. And to take the nickname booty bandit, which was very likely, if it existed at all, which the record says it did not. Well, we're going to assume it existed. We're going to assume it existed, and we're going to assume that the guards knew that he was known as the booty bandit. Assuming all of that, it doesn't get anywhere near criminal recklessness because it could mean anything. Most likely, it was a gay slur towards Morgan. It could be ironic. It could mean anything. Prisoners have all sorts of off-color nicknames. That's a fact of life. It could be because he liked masturbating in his cell room. Excuse me, Judge LaGuardia. It could be because he liked masturbating in his cell block. Although that doesn't really make sense, I don't think. Why would that be booty related? I think it makes just as much sense as deducing from booty bandit that an inmate with no record of sexual assault is such a risk for sexual assault that it would mean that the guards are criminally reckless for not taking him out of the cell. Oliver says in his deposition that he does have a reputation for sexual assault in prison, right? And that's a bare assertion. That bare assertion is certainly not enough to establish criminal recklessness. Your Honors, if he does have a reputation for sexual attacks in prison and the guards know about that reputation, then that would be enough. Wouldn't you agree? I am not sure, Your Honor. And I'd point the court towards one example is Johnson v. Boyd, 701 Federal Appendix 841. The plaintiff there was attacked and alleged that the guards knew that the attacker had a well-documented propensity for violence on inmates, staff, and himself, but they did nothing. The court said that that bare assertion without more evidence of things that would put the guards— That's a different question than the one I'm asking, right? What I'm trying to ask you is whether if the guards knew that he had a reputation for sexual attacks, that would be enough, wouldn't it? That would be a different question for summary judgment, although the guards would still have to know— You're really going to argue that the guards—that that wouldn't be enough? Putting him into a cell with a guy that the guards knew had a reputation for sexual attacks while the guy was on drugs and masturbating and Mr. Oliver was telling them he was afraid? So— I mean, is that the argument you want? You can if you want. That's not the hill I want to dial, Your Honor, but the point that I do want to make is that the guards absolutely did not know any of that and had no reason to know that. A nickname doesn't convey that. The fact that he was masturbating in his cell, which makes him just like every other prisoner, doesn't convey that. We just don't have anything beyond bare assertions. What happened to Mr. Oliver was tragic. That does not automatically translate to constitutional liability for the guards because they had no idea that it was about to happen and that they needed to do something to stop it. All right. Thank you. Mr. Gonzales, we'll hear again from you. Thank you, Your Honor. I just—I want to highlight some of the strongest facts here and make sure I get those out. So as to Officer Stanfield, here's what happens the day of the assault. So Oliver is removed from his cell by Stanfield and another officer, and he says to Stanfield, I do not want to go in there. That's the booty bandit, and, you know, we can talk about whether that's ambiguous or what, but let's keep going. Then he's placed in the cell with Morgan. Immediately upon being placed in the cell, Morgan takes his clothes off. He starts masturbating, and he starts saying, would you give me oral sex? Will you help me out? Things of that nature. That's all and the record. Then Oliver is removed from the cell by Stanfield for a medical checkup, and he says to Stanfield, this is the testimony, he's going to do something. He's already got his penis hanging out and making a lot of sexual comments and statements about doing stuff. After he reports that to Stanfield, Stanfield puts him back into the cell with Morgan and then just walks away. Now, that is about, Judge Rosenbaum, to your question about what the guards knew, I think that that creates an issue of fact about what Stanfield knew. Verbal reports of assaults, whatever you'd like to call them, are sufficient evidence to create an issue of fact. But would it, I mean, at least this is for me personally, I think it would be stronger if there had been evidence that Morgan had a history of violent attacks or sexual attacks. But I don't see that in the record. And I don't believe it is in the record, Your Honor. And that may be so, but the idea that we can say that . . . Do we have in the record that Oliver says he has a history of sexual attacks in prison? I believe that's in the plaintiff's statement of facts, Your Honor. But in terms of whether that's in his sworn deposition testimony, I don't think that that's in there. But there is sworn testimony about Morgan's violent nature, which comes out in the deposition when he's talking about why the six or seven officers removed him. I also want to say that, you know, as to whether Farmer helps or hurts, the idea that because Oliver hasn't fully transitioned or anything of the sort and we choose to be consistent with the district court record by using the male pronoun, that doesn't mean that Farmer's holding doesn't apply to this case. The record establishes, we're at summary judgment, that Oliver is a transgender inmate. And Farmer establishes and holds that a prison guard is deliberately indifferent when a prison guard places a transgender inmate into a dangerous situation where they know that assault could follow as a result of that. And we think that between that case and Caldwell, there are issues of fact for a jury to resolve. All right. I see I'm over my time. Thank you very much. And Mr. Gonzalez, I'll note that you were court appointed. We very much appreciate your service to the court and your excellent argument today. And we also appreciate the excellent argument from Mr. Bergethon. Thank you both. And we'll be in recess until tomorrow. All right.